Belknap,  }
Feb. 6, 1912. }

## STATE v. GROSS.

Where an offer to buy spirituous liquor is accepted and the price therefor is paid within this state, and the goods, having been shipped from another state in pursuance of an order transmitted by the vendor, are delivered to the purchaser at an express office here, the sale is made in New Hampshire and the title to the property passes upon its delivery by the common carrier.

In such case it is immaterial that the vendor had neither property in nor possession of the liquor which was the subject of sale, and that the goods were not delivered to the purchaser at the place where the contract was made.

The admission of immaterial testimony which has no prejudicial effect does not furnish cause for setting aside a verdict.

INFORMATION, filed March 30, 1911, charging the illegal sale of two quarts of whiskey. Plea, not guilty. Trial by the court, and verdict of guilty to which the defendant excepted. Transferred from the March term, 1911, of the superior court by *Plümmer*, J.

*Frank P. Tilton*, solicitor, for the state.

*Owen & Veazey* and *Arthur A. Tyler*, for the defendant.

PARSONS, C. J. The information charges the unlawful sale of two quarts of whiskey to one Lyford, at Laconia, December 10, 1910. By agreement, the case was tried by the presiding judge, who found a verdict of guilty. The sale charged was prohibited by section 15, chapter 112, Public Statutes: "If any person, not being an agent of a town for the purpose of selling spirit, shall sell . . . any spirituous liquor, in any quantity, he shall be fined," etc. The exception to the general verdict, which is not expressly stated to be based upon the special facts found, raises merely the question whether any of these findings are as matter of law so inconsistent with the general finding of guilty that that finding cannot stand. If, however, the case was intended to mean that the general verdict was based upon the special facts stated, the additional question would be presented whether the inference of guilt could reasonably be drawn from these facts. *Kidd* v. *Trust Co.*, 75 N. H. 154, 155, 157; *Kidd* v. *Traction Co.*, 74 N. H. 160, 176, 177; *Dusseault* v. *Association*, 74 N. H. 407; *Jaques* v. *Chandler*, 73 N. H.

376; *Allen* v. *Association*, 72 N. H. 525; *Concord Coal Co.* v. *Ferrin*, 71 N. H. 33; *Noyes* v. *Patrick*, 58 N. H. 618.

Taking the view most favorable to the defendant, were there facts in evidence from which the inference that Gross sold Lyford spirituous liquor in Laconia, as alleged, could be drawn? The account of the transaction is that Lyford went to the defendant's office in Laconia for the purpose of buying whiskey; that he told the person in charge (Otto A. Gross, who was the defendant's brother and agent) that he wanted to buy two quarts of whiskey. He was asked what kind of whiskey, and he replied "good whiskey." Gross then said he would give him a certain brand. Lyford paid the price asked and was told that he could get the whiskey at the express office in Laconia the next day. These facts show an offer to buy, an acceptance of the offer, payment of the price, and a delivery to the purchaser in this state, and authorize, if they do not require, a verdict of guilty. No question has been raised because the transaction was entirely with the defendant's agent. The fact found, that as a general thing the business the defendant carried on at his office was transacted as in this case, authorizes the inference that in this case the acts of the agent were authorized or ratified by him and were his acts. *State* v. *Roberts*, 55 N. H. 483; *State* v. *Colby*, 55 N. H. 72; *State* v. *Bonney*, 39 N. H. 206; *State* v. *Foster*, 23 N. H. 348, 353.

The specific finding relied upon to upset the verdict is that Gross, the defendant, did not have any property in the whiskey delivered to Lyford. But that fact is immaterial. "A servant or agent is liable under the statute for unlawfully selling spirituous liquor, the property of his principal." *State* v. *McGuire*, 64 N. H. 529. "Here is no question upon the contract of sale. It is the act of selling that causes the mischief against which the statute is aimed and which the statute punishes as a crime. . . . Every sale by an agent, regarded as a contract, is the sale of the principal and not of the agent; but to hold that an agent who sells liquors without license, by general instructions from his principal, is not liable under the statute as the seller would go far to defeat the object of the law. The criminal act might be committed, and the mischief accomplished by the agent in this state, while the principal resided in another jurisdiction, quite beyond the reach of punishment. The act of selling, we think, constitutes the statutory offence. It is made a crime to sell without license, and whoever actually makes the sale, though acting as agent for another, is

guilty of the offence." *Perley*, C. J., in *State* v. *Haines*, 35 N. H. 207, 208, 209. "It appears to us that one who offers an article for sale, either upon the application of the purchaser or otherwise, and who, when the offer is accepted, delivers the article in pursuance of the offer, does 'sell' or make a sale, according to the ordinary sense and meaning of that term. It would seem strange and contradictory to maintain that one who sells goods on commission, or as the factor, agent, or salesman of another, does not sell them. The argument assumes that a sale must be construed to be a contract by which the owner of property alienates it and transfers his title to another. But this is a very limited view of the subject. It is no less a sale, and even a valid sale, when made by the authority of the owner. . . . The statute prohibits all sales by unlicensed persons, as well sales *de facto* as sales by an owner." *Shaw*, C. J., in *Commonwealth* v. *Hadley*, 11 Met. 66, 68.

It is further objected that the defendant did not have possession of the whiskey and did not deliver the whiskey from the place of sale. Briefly, the course of business was as follows. The defendant was engaged in the liquor business as a licensed dealer when such business was permissible in Laconia and Ashland. After these places voted against licensing the sale of liquor, he entered into an arrangement to sell liquors for a firm in Boston, who gave him· a writing saying: "We take pleasure in introducing Mr. E. C. Gross, who is now selling goods for us in New Hampshire. Any order you may entrust to his care will be promptly executed by ——." Since receiving the above, the defendant has occupied the premises in Laconia formerly used by him as a licensed dealer for the sale of liquors, and has been engaged in taking orders for spirituous and malt liquors. The case contains the form of an order blank addressed to E. C. Gross, agent, Laconia, in the following terms:

"Dear Sir: Kindly send the following order by Am. Express for which please find enclosed $— for payment of same.

Items                         Brands                         Price

Yours truly,

Important: Cash must accompany order. All orders are received subject to the acceptance of the shipping firms in Boston, Mass."

The defendant's agent with whom Lyford dealt, after payment by Lyford, wrote on such a blank the brand and quantity of whiskey

agreed upon and "Name, John Lyford, call for, Laconia, N. H.,"
and sent the same to the Boston firm, who filled the order at their
place of business in Boston and shipped the whiskey by American
Express, addressed to Lyford at Laconia. Lyford called at the
express office as directed by Gross and the whiskey was delivered to
him, he paying the express charges.

If the course of business indicated by this blank had been carried
out, a different question would be presented. If it were found, or
the evidence conclusively proved, that Lyford merely employed
Gross to transmit an order for him to a firm in Boston, directing
them to deliver spirituous liquor to a common carrier in Boston for
transportation to him in Laconia, the inquiry would necessarily
take a different course. But nothing of that sort was done. Lyford
was not requested to sign a blank of any kind or description;
the matter of the defendant's agency was not mentioned. Lyford
had heard that the defendant was the agent of a concern for the
purpose of taking orders for liquor; but from what took place at
the time, he understood he purchased whiskey of Gross and did
not understand he had authorized Gross to order whiskey shipped
to him.

In view of these facts, it is clear it was not found that Lyford,
through Gross, purchased the whiskey in Boston, or that the title
passed to Lyford when the goods were delivered to the Express
Company. The sale was not in Boston, but in New Hampshire;
and the title passed in Laconia when the goods were delivered to
Lyford at the place where he was directed to apply for them. *State*
v. *Leary*, 75 N. H. 459, 461; *Suit* v. *Woodhall*, 113 Mass. 391.
This delivery was that provided for in the contract of sale and
resulted from the transmission of the order to the Boston firm.
Upon these facts it could be found that the delivery in New Hamp-
shire was the act of the defendant equally as if, after the contract
of sale was made, some other employee of his had completed the
transaction by handing the whiskey to Lyford. In such case, the
transaction being a misdemeanor, all participating therein with
knowledge (the defendant himself, his brother who made the sale,
and the employee who delivered the goods) would be separately
liable as principals in the offence. *State* v. *Nowell*, 60 N. H. 199;
*State* v. *Felch*, 58 N. H. 1. If the title did not pass to Gross upon
the delivery to the Express Company, it remained in the Boston
owners; and the delivery by the Express Company as their agents,
in completion of a contract of sale made here, was in violation of

the laws of this state. Whether the Boston owners or the Express Company acted with such knowledge as would make them participants in the offence or not, Gross, knowingly taking part in a sale of liquor contrary to the law of the state, is liable upon the authorities above cited as principal, to the same extent as if he had personally conducted the entire transaction.

Whether the agency scheme for the sale of liquor indicated by the facts found, but which the case finds is not generally followed, is a violation of chapter 112, Public Statutes, or its amendments, is not now before the court. If it were, it might be important to ascertain whether the agency was real or formal. Whatever the relation, however, between Gross and the Boston firm, upon the facts found, as between Gross and Lyford, Gross was the vendor. The contract of sale was made in New Hampshire, payment was made, and the sale was completed by delivery here. The transaction was intrastate and not interstate. The fact that Lyford paid the express charges did not convert the transaction into a sale in Massachusetts. That was a mere incident of the intrastate contract of sale. *Banker Bros.* v. *Pennsylvania*, 222 U. S. 210.

The evidence objected to, that the defendant collected empty beer cases delivered containing beer upon orders taken by him, related to the method of doing business and was not incompetent. If immaterial as having no relation to the particular transaction held sufficient to authorize the verdict, it could have had no tendency to produce the verdict and was not prejudicial.

*Exceptions overruled.*

BINGHAM, J., dissented: the others concurred.